UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSHUA E.,

           Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

CASE NO. 3:21-CV-5618-DWC

ORDER

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI")). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 5.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when he evaluated the medical opinions of two reviewing physicians as well as Plaintiff's own testimony. As this error informed the ultimate disability determination, the ALJ's error is therefore harmful, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

ORDER - 1

## FACTUAL AND PROCEDURAL HISTORY

On November 27, 2019, Plaintiff filed applications for DIB and SSI, alleging disability as of November 1, 2019. *See* Dkt. 8, Administrative Record ("AR") 15, 270, 272. The applications were denied upon initial administrative review and on reconsideration. *See* AR 67–68, 89–90. A hearing was held before ALJ Lawrence Lee on March 11, 2021. *See* AR 32–60. In a decision dated March 31, 2021, ALJ Lee determined Plaintiff to be not disabled. *See* AR 12–31. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See* AR 1–6; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred in: (1) evaluating the medical opinion evidence; (2) evaluating Plaintiff's symptom testimony; and (3) evaluating lay witness testimony. Dkt. 10, p. 1.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**I. Whether the ALJ Properly Evaluated the Medical Opinion Evidence**

Plaintiff assigns error to the ALJ's evaluation of medical opinions from reviewing physician James Haynes, M.D., as well as non-examining medical consultants Robert Hander, M.D. and Norman Staley, M.D. Dkt. 10, pp. 4–9.

### A. Medical Opinion Standard of Review

The regulations regarding evaluation of medical evidence have been amended for claims protectively filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). As Plaintiff filed his claims for DIB and SSI on November 15, 2017, the ALJ applied the new regulations. *See* AR 21, 373.

In the new regulations, the Commissioner rescinded Social Security Regulation ("SSR") 06-03p and broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263. The Commissioner also clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

Additionally, the new regulations state the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c (a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.152c(c), 416.920c(c). The most important factors are supportability and consistency. 20 C.F.R. §§ 404.152c(a), (b)(2), 416.920c(a), (b)(2).

Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate

how [he] considered the medical opinions" and "how persuasive [he] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a), (b)(1), 416.920c(a), (b)(1). The ALJ is specifically required to "explain how [he] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The Ninth Circuit currently requires the ALJ to provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). When a treating or examining physician's opinion is contradicted, the Ninth Circuit has held the medical opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

At this time, the Ninth Circuit has not issued a decision stating whether it will continue to require an ALJ to provide "clear and convincing" or "specific and legitimate reasons," or some variation of those standards, when analyzing medical opinions. Regardless, it is not clear the Court's consideration of the adequacy of an ALJ's reasoning under the new regulations differs from the current Ninth Circuit standards in any significant respect. The new regulations require the ALJ to articulate how persuasive the ALJ finds medical opinions and to explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b). The new regulations appear to, at the least, require an ALJ to specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion. Furthermore, the Court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See* 82 Fed. Reg. at 5852 ("Courts

reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision.").

Therefore, based on the above considerations, the Court will determine whether the ALJ's decision is free of legal error and supported by substantial evidence.

### B. Opinion of Dr. Haynes

Plaintiff first assigns error to the evaluation of Dr. Haynes's opinion. Dkt. 10, p. 4. At the hearing, Dr. Haynes testified that Plaintiff's frequent headaches and hyperreflexia were the result of a Chiari I malformation in the brain, and the headaches occurred when physical strain affected his intracranial pressure. AR 22. Dr. Haynes stated that while these headaches could be expected to resolve with corrective surgery, at the time of the hearing, Plaintiff would be limited to lifting and carrying 10 pounds frequently and 20 pounds occasionally; never climbing ladders, ropes, or scaffolds; occasionally stooping, kneeling, crouching, crawling; and frequently balancing and climbing ramps and stairs. *Id.* When asked as to whether Plaintiff's functional capacity would change while Plaintiff was experiencing a headache, Dr. Haynes stated that he "didn't see that, that [headaches] would be disabling." AR 42. Plaintiff argues that this opinion expressed a conclusion on the question of disability that was reserved to the Commissioner. Dkt. 10, p. 8. But a doctor's opinion regarding the likelihood of the claimant's sustaining full-time competitive employment is not necessarily a conclusion reserved to the Commissioner; rather, it is "an assessment based on objective medical evidence of [the claimant's] likelihood of being able to sustain full-time employment given the many medical and mental impairments [claimant] faces[.]." *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012). Furthermore, Plaintiff offers no

support for the proposition that the ALJ was required to reject an opinion that was not sufficiently explained. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

Plaintiff describes this functional assessment as incomplete with regard to the full functional impact of his headaches, because Dr. Haynes did not state in precise terms how Plaintiff's functional capacity would be affected *while experiencing* a headache. Plaintiff argues that, because Dr. Haynes was unable to offer a precise assessment of his physical capacity when so compromised, further development of the record was necessary. *Id.*

The ALJ "has an independent duty to fully and fairly develop the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal citations and quotations omitted). "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing *Tonapetyan*, 242 F.3d at 1150). However, the ALJ's duty to develop the record cannot be used to shift the burden of proving disability to the ALJ. *See Mays v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001) (noting it is the claimant's "duty to prove she was disabled" and she cannot "shift her own burden" to the ALJ by virtue of the ALJ's duty to develop the record). It is the claimant who is "responsible for providing the evidence used to make the RFC determination" and for ultimately proving she is disabled. *Gray v. Comm'r. of Soc. Sec. Admin.*, 365 Fed.Appx. 60, 63 (9th Cir. 2010); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512 ("In general, you have to prove to us that you are blind or disabled. You

must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled.").

Here, the gaps which Plaintiff asserts existed in Dr. Haynes's opinion did not render the record inadequate or trigger the ALJ's duty to develop the record. Neither the ALJ nor the reviewing State agency medical consultants, upon whose opinions the ALJ relied upon in determining Plaintiff's RFC, found the record to be inadequate. There is no requirement that the record contain a treating or examining opinion that exactly matches all the physical restrictions of the RFC. Rather, "[t]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 806 F.3d 996, 1006 (9th Cir. 2015); Dkt. 18 at 2. Moreover, State agency medical consultants are highly qualified specialists with expertise in Social Security disability evaluation and ALJs frequently rely upon such opinions to translate clinical findings, objective testing and treating and examining medical opinions in the record into concrete functional limitations. 20 C.F.R. § 404.1527(5)(2)(i); *see, e.g., Skeens v. Astrue*, 903 F.Supp.2d 1200 (W.D. Wash. Oct. 9, 2012) (ALJ properly relied on State agency consultant to translate medical opinions in the record into concrete functional limitations for purposes of disability evaluation). It was Plaintiff's burden to provide the evidence used to make the RFC determination. *See Gray*, 365 Fed.Appx. at 63. To require the ALJ to further develop the record here would improperly shift Plaintiff's burden of proving disability to the ALJ. *See Mayes*, 276 F.3d 453. Thus, the Court finds any ambiguity in Dr. Haynes's opinion did not trigger the ALJ's duty to develop the record or render the ALJ's reliance on the opinions of reviewing doctors unreasonable. In arguing otherwise, Plaintiff misapprehends the purpose of a residual functional capacity assessment, which is to indicate the most a claimant can do considering their limitations or restrictions, not the least a claimant can do. *See* SSR 96-8p.

### C. Opinions of Dr. Hander and Staley

Robert Hander, M.D., offered an opinion on Plaintiff's functional capacity as part of the initial disability determination in February 2020. *See* AR 75–78. Therein, Dr. Hander opined that Plaintiff could work at a light exertional level; could frequently climb ramps and stairs but only occasionally climb ladders, ropes or scaffolds, and crawl, in addition to needing to avoid concentrated exposure to noise and hazards. AR 75–76. Norman Staley, M.D., another state agency medical consultant, reviewed Plaintiff's records for the reconsideration disability determination and affirmed Dr. Hander's opinion. AR 99–101. The ALJ found both opinions persuasive due to their consistency with the objective medical evidence. AR 23–24.

Plaintiff assigns error to the ALJ's reliance on these opinions, because Plaintiff asserts that they were contingent upon his undergoing a successful surgery to resolve his Chiari I malformation in the future. Dkt. 10, p. 6. Plaintiff's contention has merit. Both Dr. Hander's and Dr. Staley's opinions stated only that Plaintiff would be able to perform light work *after* undergoing surgery to treat his Chiari I malformation, which was expected to take place on October 31, 2020. *See* AR 76, 86. Although the surgery had not taken place at the time of the hearing, the ALJ appears to have found that Drs. Hander and Staley determined Plaintiff to be capable of light work without any surgery. AR 23–24.

The ALJ did not find the opinion of Dr. Haynes, who stated that Plaintiff could perform light work without surgery, to be any more or less persuasive than the opinions of Drs. Hander and Staley, who stated that Plaintiff would be capable of light work after a surgery. *Id.* Without a finding that resolves this discrepancy, there is no way for this Court to review whether the ALJ's assessment of the medical opinions was reasonable. Nor is the Commissioner's contention that this portion of the opinions was a prognosis, rather than a medical opinion, persuasive when the

ALJ did not give this as a reason for disregarding the statement. "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947)). The ALJ erred in omitting this portion of Drs. Hander and Staley's opinions without providing an explanation as to why.

While the ALJ erred, the Court must determine whether this error was harmless. Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118–1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. §2111)).

In this case, the ALJ's error was not harmless. Had the ALJ properly considered the opinions of Drs. Hander and Staley in their entirety, the ALJ may have incorporated limitations opined therein into Plaintiff's residual functional capacity. Had the ALJ incorporated such limitations, in turn, the ultimate disability determination may have changed and, as Plaintiff notes, the ALJ may have found that Plaintiff experienced a closed period of disability. Dkt. 12, p. 2. Accordingly, the ALJ's error was not harmless and requires reversal.

**II. Whether the ALJ Properly Evaluated Plaintiff's Subjective Testimony**

Plaintiff assigns error to the ALJ's finding that his testimony was not fully credible. *See* Dkt. 24, pp. 9–17. An ALJ may discount a plaintiff's symptom testimony by giving specific, clear and convincing reasons supported by substantial evidence. *See Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014).

At the hearing, Plaintiff described his activity-related headaches. He testified that bending over to tie his shoes could trigger a headache that lasted for five minutes to one hour. AR 48. He tried to avoid coughing, laughing, straining, bending over, or lifting heavy things because they triggered severe headaches. AR 50–53. He used stool softeners to avoid straining and (overused) nasal sprays to avoid sneezing. AR 56. During headaches his head throbbed and he saw spots. AR 51–52. Lying down flat with a pillow under his neck helped ease the pain, as did taking deep breaths and bringing his heart rate down also helped. AR 53. Sometimes his headaches went away completely, but other times they lingered for the rest of the day, making it difficult for him to concentrate. He could not watch television, talk on the phone, or answer important questions. AR 52. Plaintiff stated that he had headaches every day, but their severity varied. Some days, he could sit and wait 15 to 20 minutes until a headache passed, while other times, it would last longer. Plaintiff stated that if he were working, he would have to take breaks or leave the job site every day due to headaches. AR 57–58.

The ALJ did not find Plaintiff's statements fully credible, reasoning (1) that they were inconsistent with the medical record, and (2) that Plaintiff's symptoms had improved with treatment.

With respect to the ALJ's first reason, the ALJ found that the objective evidence revealed generally benign findings with only minimal neurological deficits, such as hyperreflexia. AR 22.

An ALJ may consider the objective evidence as one of a number of relevant factors when evaluating the reliability of symptom testimony. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). As the ALJ discussed, examinations consistently revealed no acute distress and normal memory, attention, and concentration. AR 22, 425–27, 431–32, 491. In addition, providers repeatedly observed good range of motion and normal gait, despite Plaintiff's rapid reflexes. AR 425–27, 431–32, 459, 491. The ALJ did not, however, explain how these normal physical exam findings were at odds with his primary complaint of daily headaches. Thus, this was not a clear and convincing reason for rejecting Plaintiff's testimony. *See Burrell*, 775 F.3d at 1136–37.

With respect to the ALJ's second reason, the effectiveness of treatment is relevant to the evaluation of a claimant's symptom testimony. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). Here, the ALJ noted Plaintiff's report that medication eliminated the constant occipital headaches, in addition to reducing the severity, if not the frequency, of his headaches. AR 494, 512. These medications included prescription nortriptyline as well as cannabis. *Id.* Based on these findings, the ALJ determined Plaintiff's symptoms were not as severe as alleged, but the ALJ did not identify any records of improvement that showed a meaningful inconsistency with Plaintiff's testimony. Plaintiff testified to using not only medications to reduce the possibility of headaches, but also to medications that would reduce even the possibility of an activity-induced headache, including stool softeners and nasal sprays. AR 56, 60.

In support of his finding, the ALJ also cited a February 2020 primary care treatment note indicating that Plaintiff reported experiencing no headaches. AR 24 (citing AR 470). The treatment note in question concerns an annual physical examination with Plaintiff's primary care provider, and the focus of the examination was on general health matters. AR 470. The fact that Plaintiff was not experiencing a headache during the visit does not support a finding of

improvement. In sum, the ALJ's finding of improvement did not contradict Plaintiff's testimony. Because the ALJ failed to provide a clear and convincing reason with substantial evidentiary support for discounting Plaintiff's testimony, the ALJ erred. *See Burrell*, 775 F.3d at 1136–37.

### III. Whether the ALJ Properly Evaluated Lay Witness Testimony

Plaintiff also avers that the ALJ erred in evaluating testimony from Plaintiff's mother. Dkt. 10, pp. 9–17. The Court has directed the ALJ to reassess medical opinion evidence and Plaintiff's testimony on remand. *See* Section I, *supra*. As Plaintiff will be able to present new evidence and testimony on remand, and because the ALJ's reconsideration of this evidence could impact his assessment of the lay witness statement, the ALJ shall reconsider this evidence on remand.

### CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 22nd day of March, 2022.

                                               David W. Christel
                                               United States Magistrate Judge